United States District Court

For the Northern District of California

1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8       FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   DENNIS HART, et al.,                    No. C-07-5845 MMC

11          Plaintiffs,              **ORDER GRANTING IN PART AND
                                     DENYING IN PART PLAINTIFFS'**
12     v.                            **MOTION FOR SUMMARY
                                     ADJUDICATION; GRANTING IN PART**
13   CITY OF ALAMEDA,                **AND DENYING IN PART DEFENDANT'S
                                     MOTION FOR PARTIAL SUMMARY**
14          Defendants.             **JUDGMENT**
                                 /
15

16          Before the Court are plaintiffs Dennis Hart, Ron Miller, and all consenting individuals'

17   Motion for Summary Adjudication of Issues,[1]  filed January 12, 2009, and defendant City of

18   Alameda's ("City") Opposition to Plaintiffs' Motion for Summary Adjudication and Motion for

19   Partial Summary Judgment, filed February 6, 2009.  Having read and considered the

20   papers filed in support of and in opposition to each motion and the arguments of counsel at

21   the March 13, 2009 hearing, the Court rules as follows.

22                              **DISCUSSION**

23   **A.     Regular Rate of Pay**

24          Under § 7(e) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(e) ("§ 7(e)"),

25

26          [1]The instant action is a "collective action" brought under 29 U.S.C. § 216(b), on
     behalf of the named plaintiffs and all similarly situated individuals who have filed consent
27   with the Court.  (See Compl. Ex. A (copies of consent forms)); see also 29 U.S.C. § 216(b);
     Ballaris v. Wacker Siltronic Corp., 370 F.2d 901, 906 n.9 (9th Cir. 2004) (noting § 216(b)
28   "allows for a type of class action, known as a 'collective action,' for employees who are
     similarly situated to a plaintiff and who file consent in writing with the court").

1  an employee's "regular rate" of pay "shall be deemed to include all remuneration for

2  employment paid to, or on behalf of, the employee, but shall not be deemed to include,"

3  inter alia, "payments made for occasional periods when no work is performed due to

4  vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar

5  cause," see § 7(e), (e)(2).  The employer bears the burden of showing it is entitled to

6  exclude a particular payment from the "regular rate" of pay.  See O'Brien v. Town of

7  Agawam, 350 F.3d 279, 294 (1st Cir. 2003).

8       Here, plaintiffs are members of the Sworn and Non-Sworn Units of the Alameda

9  Police Officers Association ("APOA").  Under the Memorandum of Understanding ("MOU")

10  entered into by the City and the APOA Sworn Unit, members of that unit are paid

11  "additional compensation for holidays at the straight-time daily rate of 1/14.44 of their

12  regular salaries."  (See Wilkinson Decl. Ex. A § 16.)  This additional compensation is paid

13  "every pay period, regardless of whether or not the police officer works the holiday or not."

14  (See Wilkinson Decl. Ex. G (Deposition of Karen Willis) at 17:10-16.)  Similarly, under the

15  MOU entered into by the City and the APOA Non-Sworn unit, members of the unit are paid

16  "additional compensation for City recognized holidays with no option for time off, at the rate

17  of .07502 of their regular salaries paid on a biweekly basis."  (See Wilkinson Decl. Ex. B §

18  16.)[2]  Although the basis for the calculation of the above-described "additional

19  compensation" (hereafter "Additional Compensation") is not in evidence, counsel for the

20  parties, at the hearing on the motion, agreed that such Additional Compensation was

21  calculated by assigning a monetary value to a holiday, multiplying that value by the total

22  number of holidays in a given year, and dividing the resulting figure by the number of pay

23  periods in the year.

24       By their motion, plaintiffs seek summary adjudication that the City is required to

25  include the Additional Compensation in plaintiffs' "'regular rate' of pay . . . as that term is

26  defined by Section [7(e)] of the [FLSA]."  (See Pls.' Mot. at 10:7-10.)  By its motion, the City

27

28       [2]The facts described above are undisputed.

2

1    seeks summary judgment that the Additional Compensation "shall not be included in

2    determining the FLSA 'regular rate' of pay." (See Def.'s Opp'n/Mot. at 10:3-5.)

3         In support of their motion, plaintiffs argue the Additional Compensation must be

4    included in the "regular rate" of pay because it is paid regularly in each pay period and

5    irrespective of whether a holiday falls within the pay period.  Although the Court is not

6    persuaded that the timing of a payment necessarily defines its character, the Court, as set

7    forth below, agrees with plaintiffs that the Additional Compensation must be included in the

8    "regular rate" of pay under § 7(e).

9         In support of its motion, the City, relying on § 7(e)(2) and the regulations

10   promulgated thereunder, argues that the Additional Compensation "is specifically allocated

11   for the holidays." (See Def.'s Opp'n/Mot. at 8:20-9:1.)  In particular, in the case of an

12   employee who does not work on a given holiday, the City contends the Additional

13   Compensation is excluded from the employee's "regular rate" of pay pursuant to § 7(e)(2).

14   See § 7(e), (e)(2) (providing "regular rate" of pay "shall not be deemed to include . . .

15   payments made for occasional periods when no work is performed due to vacation, holiday,

16   illness, failure of the employer to provide sufficient work, or other similar cause"); 29 C.F.R.

17   § 778.218(a).  In the case of an employee who does work on a given holiday, the City

18   contends the Additional Compensation is a payment made "in addition" to the employee's

19   "customary rate," and, thus, likewise is excluded from the "regular rate" of pay.  See 29

20   C.F.R. § 778.219(a) (interpreting § 7(e)(2); providing if "an employee who is entitled to a

21   paid idle holiday . . . foregoes his holiday . . . and performs work for the employer on the

22   holiday" and "[i]f, under the terms of his employment, he is entitled to a certain sum as

23   holiday . . . pay, whether he works or not, and receives pay at his customary rate (or

24   higher) in addition for each hour that he works on the holiday . . . the certain sum allocable

25   to holiday . . . pay is still to be excluded from the regular rate").[3]

26

27        [3]The City does not contend the Additional Compensation may be excluded from the
     "regular rate" of pay under any provision other than the above-referenced portion of
28   § 7(e)(2) and the above-referenced regulation promulgated thereunder.

1    The question thus presented is whether any of the payments at issue herein is in

2    fact a payment "due to" a holiday.  See § 7(e)(2).

3    As noted, the City contends the payments at issue represent the total value of a

4    year's holidays, which total is, in essence, spread out over the course of that year, rather

5    than paid in the period in which any given holiday occurs.  The flaw in the City's argument

6    is that it assumes an employee who works a full twelve months in a particular year.  If,

7    however, an employee works fewer than twelve months, he will not necessarily receive the

8    payment to which the City asserts he is entitled "due to" a holiday.  Rather, depending on

9    the particular dates of his employment, such employee may be either under- or over-

10   compensated for the holidays occurring during the time of his employment.

11   For example, assuming there are thirteen holidays per year recognized by the City,

12   each with a value of $100, the total value of the year's holidays would be $1300; if there are

13   twenty-six pay periods per year, the Additional Compensation received each pay period

14   would be $50.  Thus, an employee who works the full year would, under the City's theory,

15   be entitled to a total of $1300 "due to" the thirteen holidays that occurred during his

16   employment, and, over the course of the year, he would in fact receive precisely $1300 in

17   Additional Compensation.

18   An employee who begins his employment in October and works through December,

19   however, assuming one holiday in October (Columbus Day), two in November (Veterans'

20   Day and Thanksgiving), and one in December (Christmas), would, under the City's theory,

21   be entitled to a total of $400 for the value of the holidays that occurred during his

22   employment, yet he would in fact receive only $300 in Additional Compensation over the

23   six pay periods during which he worked.  Conversely, an employee who works only the

24   months of March through May, assuming no holidays in March or April and one in May

25   (Memorial Day), would, under the City's theory, be entitled to only $100 but, like the

26   employee who works from October through December, would receive $300 in Additional

27   Compensation.  Under such circumstances, the Court is not persuaded that any of the

28

4

1    Additional Compensation payments constitutes a payment made "due to" a holiday.[4]

2         Accordingly, to the extent plaintiffs seek summary adjudication that the City is

3    required to include the Additional Compensation in plaintiffs' regular rate of pay, plaintiffs'

4    motion will be granted, and to the extent the City seeks summary judgment that the

5    Additional Compensation shall not be included in the regular rate of pay, the City's motion

6    will be denied.

7    **B.    28-Day Work Period**

8         Under § 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1) ("§ 7(a)(1)"), an employee

9    usually must receive compensation "for his employment in excess of" forty hours per week

10   "at a rate not less than one and one-half times the regular rate at which he is employed."

11   See § 7(a)(1).  A "limited exception" from the overtime limit provided by § 7(a)(1), however,

12   is offered to "public employers of law enforcement personnel or firefighters" under § 7(k) of

13   the FLSA, 29 U.S.C. § 207(k) ("§ 7(k)").  See Adair v. City of Kirkland, 185 F.3d 1055, 1059

14   (9th Cir. 1999); see also § 7(k).  "The '7(k) exemption' increases the overtime limit slightly

15   and gives the employer greater flexibility to select the work period over which the overtime

16   limit will be calculated."  Adair, 185 F.3d at 1060.  An employer "bears the burden of

17   showing that it qualifies for a section 7(k) exemption."  See Adair, 185 F.3d at 1060.

18   "Generally, the employer must show that it established a 7(k) work period and that the 7(k)

19   _____

20        [4]As plaintiffs point out, the Department of Labor, in an opinion letter, has concluded
     that payments analogous to the payments herein at issue may not be excluded from the
21   "regular rate" of pay.  The opinion letter, in relevant part, states:

22        Q.5.  Fire fighters who work for City D on 24-hour shifts are not entitled to take
          holidays.  Instead, they receive "in lieu of holiday pay."  The fire fighters receive 5%
23        of their base pay as "in lieu of holiday pay" each and every biweekly pay period.  The
          fire fighter gets 5% if he works the holiday, if he does not work the holiday and even
24        if there is no holiday in the pay period.  Thus, a fire fighter gets the same 5% added
          to each paycheck regardless of whether he works every holiday in the year or no
25        holidays in the year.  Under these circumstances, must the "in lieu of holiday pay" be
          included when calculating the regular hourly rate of pay?

26        A.5. Yes, the "in lieu of holiday pay" must be included when calculating the
          employee's regular hourly rate of pay.

27
28   (See Wilkinson Decl. Ex. H (Dep't of Labor, Wage & Hour Div., Op. Ltr. (Sept. 30, 1999),
     1999 WL 1788163).)

1    work period was regularly recurring."  Id. (internal quotation and citation omitted).

2           By its motion, the City seeks summary judgment that "the sworn members of the

3    APOA are subject to a 28-day work period" pursuant to the above-described 7(k)

4    exemption.[5]  (See Def.'s Opp'n/Mot. at 10:5-6.)  By their motion, plaintiffs seek summary

5    adjudication that "the City is not entitled to the exemption contained in [§ 7(k)]."  (See Pls.'

6    Mot. at 10:10.)  As set forth below, the Court agrees with the City that sworn members of

7    the APOA are subject to a 28-day work period.

8           In support of its motion, the City first points to a memorandum titled "Declaration of

9    Work Period 7k Exemptions – Police," issued March 27, 1986 by the City Manager.  (See

10   Willis Decl. Ex. A.)  That memorandum, copies of which were provided to the president of

11   the APOA and the APOA members (see Schmitz Decl. Ex. U; Kingsley Decl. ¶¶ 3-5),

12   states:  "The City of Alameda hereby declares the following 7k exemption work period for

13   those non-exempt positions in the City of Alameda Police Department.  28 day work period

14   beginning April 13, 1986" (see Willis Decl. Ex. A).  The City also relies on an essentially

15   identical memorandum issued March 6, 1995 by a "Personnel Analyst" and addressed to

16   the Chief of Police.  (See Kovacs Decl. Ex. I.)  Additionally, the City has submitted an

17   Alameda Police Department General Order setting forth the method for computation of

18   overtime, as well as a worksheet titled "FLSA Regular Rate Calculations for the Alameda

19   Police Department," both reflecting a 28-day work period.  (See Tibbet Decl. Exs. D, G.)

20          In support of their motion, plaintiffs first argue that the City never paid overtime on

21   the basis of a 28-day work period (see Wilkinson Decl. Ex. G (Deposition of Karen Willis) at

22   23:10-17 (stating "overtime was paid on a daily basis")) and that MOUs entered into after

23   the issuance of the above-referenced memoranda provided for a seven-day work week

24   (see Wilkinson Decl. Ex. A § 10; id. Ex. B § 10).

25          As the City points out, however, an employer does not "forfeit its [§ 7(k)] exemption

26   by paying overtime more generously than the Secretary's regulations require."  See Milner

27   _____

28          [5]The City concedes that members of the Non-Sworn Unit of the APOA are "not
     eligible for the FLSA's 7(k) exemption."  (See Def.'s Opp'n/Mot. at 4 n.2.)

1  v. City of Hazelwood, 165 F.3d 1223, 1223 (8th Cir. 1999); Lamon v. City of Shawnee, 972

2  F.2d 1145, 1152 (10th Cir. 1992) (holding "[o]ther than adopting a specified work period,

3  the employer is not required to restructure its overtime payment practices whatsoever");

4  see also Adair, 185 F.3d at 1061 (citing Lamon).  Additionally, "there need be no

5  relationship" between a § 7(k) work period and the employees' "duty cycle," see Franklin v.

6  City of Kettering, 246 F.3d 531, 535-36 (6th Cir. 2001) (citing 29 C.F.R. § 553.224),[6] or

7  "work week," see Birdwell v. City of Gadsden, 970 F.2d 802, 806 (11th Cir. 1992) (holding

8  "[t]he regulations caution us that a work period is not the same idea as a work week or pay

9  period") (citing 29 C.F.R. § 553.224).[7]

10      Plaintiffs next argue that the above-referenced memoranda were not public, that

11  some members of the APOA never received the memoranda (see Supplemental O'Connell

12  Decl. ¶ 6 (stating, in reference to copies of 1995 memorandum, "I had never seen notices

13  of that type or content")), and that the City Manager did not have authority to issue the

14  1986 memorandum because, according to plaintiffs, only the City Council may "fix the

15  compensation" of City employees (see Gallant Decl. Ex. A (City Charter), art. III, § 3-7(G)).

16      As the City further points out, however, the establishment of a work period under

17  § 7(k) may be supported by a non-public "Inter-Office Memorandum from the City

18  Manager," see Milner, 165 F.3d at 1223, and plaintiffs have failed to cite any authority

19  suggesting such a memorandum must be received by every employee covered thereby or

20  that the power of Alameda's City Manager to "formulate rules and regulations for officers

21  and employees under his or her jurisdiction" (see Gallant Decl. Ex. A (City Charter) art. VII,

22

23  _____

24      [6]Under 29 C.F.R. § 553.224, with the exception of the limitation that a work period
   "cannot be less than 7 consecutive days nor more than 28 consecutive days," such period
25  "can be of any length, and it need not coincide with the duty cycle or pay period or with a
   particular day of the week or hour of the day."  See 29 C.F.R. § 553.224(a).

26      [7]In light of such authority, the Court has not considered plaintiffs' proffered evidence
27  that, at a May 10, 2007 meeting, the City "admitted it had never used" a 28-day work period
   (see Wilkinson Decl. ¶ 12), and, consequently, the Court does not reach the City's
28  objection to such evidence as constituting "confidential and privileged settlement
   communications" (see Def.'s Objections at 1:26-27).

§ 7-2(O)) did not encompass the authority to issue the above-referenced memorandum.[8]

Lastly, plaintiffs argue that, "[a]t best, [the City] declared a 165-hour 28-day work period" (see Pls.' Reply at 6:4), rather than a 171-hour 28-day work period (see Tibbet Decl. Ex. D (referring to 165 hours "within a 28-day cycle"); id. Ex. G (referring to 165 hours in "work period")).

Once an employer selects a work period of a particular length, however, overtime compensation, for purposes of compliance with the FLSA, is required only for hours worked in excess of a fixed number of hours set by Department of Labor regulations.  See Adair, 185 F.3d at 1060 (citing 29 C.F.R. § 553.230).  In the case of law enforcement personnel subject to a 28-day work period, such compensation is required for all hours worked in excess of 171.  See 29 C.F.R. § 553.230(c) (providing, for law enforcement personnel under 28-day work period, "overtime compensation . . . is required for all hours worked in excess of . . . 171").  Plaintiffs have failed to cite any authority suggesting an employer who, by contract, provides for a lesser number of hours than required by the FLSA is, for purposes of compliance with the FLSA, likewise obligated to do so.[9]

Accordingly, to the extent the City seeks summary judgment that sworn members of the APOA are subject to a 28-day work period, the City's motion will be granted, and to the extent plaintiffs seeks summary adjudication that the City is not entitled to the exemption contained in § 7(k), plaintiffs' motion will be denied.

---

[8]Plaintiffs' reliance, in Singer v. City of Waco, 342 F.3d 813 (5th Cir. 2003), is unavailing. In particular, in Singer, the "only evidence provided by the City" in support of its contention that it had established a 28-day work period was a "memo circulated" by the Fire Chief, stating that a "28-day work cycle will be established."  See id. at 820 (emphasis added). Here, by contrast, the City Manager, as well as a "Personnel Analyst," each issued a memorandum "declar[ing]" a 28-day work period, such memoranda were provided to the APOA and its members, and, thereafter, the 28-day work period was reflected in Police Department documents. The City need do no more to obtain the benefit of § 7(k).  See, e.g., Franklin, 246 F.3d at 536 (holding city established 28-day work period where it "adopted" period and "informed" union and officers of period).

[9]Under such circumstances, "while there may be a breach of contract, the FLSA is not violated."  See Birdwell, 970 F.2d at 806 (rejecting employees' argument that city had "waived the advantages of the [§] 7(k) exemption" by contracting for payment of overtime after lesser number of hours than provided under § 7(k) exemption).

**CONCLUSION**

For the reasons stated above:

1.  To the extent plaintiffs seek summary adjudication that the City is required to include, in plaintiffs' regular rate of pay, the "additional compensation" provided in § 16 of their respective Memoranda of Understanding, plaintiffs' motion is hereby GRANTED, and to the extent the City seeks summary judgment that such additional compensation shall not be included in the regular rate of pay, the City's motion is hereby DENIED.

2.  To the extent the City seeks summary judgment that sworn members of the APOA are subject to a 28-day work period, the City's motion is hereby GRANTED, and to the extent plaintiffs seeks summary adjudication that the City is not entitled to the exemption contained in § 7(k), plaintiffs' motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated:  June 17, 2009

_____
MAXINE M. CHESNEY
United States District Judge

9